BRYANT, ADMR., APPELLEE, v. SCHRAGE, ADMR., ET AL.,
APPELLANTS.

*Mr. C. W. Elliott* and *Messrs. Shank & Briede,* for appellee.

*Mr. E. J. Kautz,* for appellants.

Matthews, J.  This is an appeal from a judgment based on the negligent causing of the death of plaintiff's decedent.  The negligent act alleged is that a certain common stairway was maintained, the steps or treads of which had been allowed to become and remain in a defective condition which caused the decedent to fall down the stairs, resulting in injuries from which he died two days thereafter.  There is such evidence of defects in the treads that an issue of fact was made as to whether the steps were reasonably safe, and there is circumstantial evidence that the decedent's fall and death resulted directly from the defects.  This latter fact distinguishes this case from such cases as *Wartik* v. *Miller, Admx.,* 48 Ohio App., 494, 194 N. E., 433, and *Hall* v. *Ferro-Concrete Construction Co.,* 71 Ohio App., 545, 50 N. E. (2d), 556, in which the court found that the evidence furnished no reasonable basis for an inference that the death probably resulted from the defect.  We find the evidence sufficient to sustain a judgment against the defendant or defendants, who owed a duty to the decedent to exercise reasonable care to provide and maintain a reasonably safe stairway.

The defendants are George D. Schrage, administrator of the estate of David Lingler, deceased, Mayme K. Utz, Edna Heerman, Robert D. Meeker, David L. Meeker, Elizabeth Meeker, Jacques Meeker, and Ar-

thur Reiff. The judgment is against all the defendants and all have appealed.

(1) It is clear that by retaining control of the common passageway, David Lingler remained under a duty to maintain the stairway in a reasonably safe condition, and, upon his death, that duty was cast with the title upon his heirs at law who accepted the title and assumed the duty. A more particular statement of the facts is necessary to show the relation of the two other defendants to this stairway.

This stairway was a passageway from the street floor to the basement of a building in the city of Hamilton. On the street floor was a storeroom and on the second floor an apartment. In the basement were a toilet, wash room and other facilities used in common by the tenants of the storeroom and the apartment. The stairway was the means provided for access to such facilities.

Prior to and at the time of his death in October 1939, one David Lingler owned this building. On June 1, 1939, David Lingler leased the storeroom on the first floor to the defendant Arthur Reiff for a term of five years from that date and he (Reiff) has occupied the storeroom ever since and has conducted a restaurant therein. There was no reference to the stairway in this lease, but it is conceded that the lessee had the right to use it in common with the tenant of the apartment on the second floor.

David Lingler died intestate and George D. Schrage, one of the defendants, was appointed administrator of his estate. The defendants Mayme K. Utz, Edna Heerman, Robert D. Meeker, David L. Meeker, Elizabeth Meeker and Jacques Meeker are the heirs of David L. Lingler and inherited and have ever since owned the fee simple title subject to the lease to the defendant Arthur Reiff.

George D. Schrage was the son-in-law of Mayme K.

Utz, but was not the owner of any part of the title to this real estate. Nevertheless, in December 1941, he obtained a policy of insurance indemnifying him against loss which he might be required to pay on account of bodily injury to persons on any part of the premises. In this policy, he is described as administrator of the estate of David Lingler and his interest that of owner.

He collected the rent from Reiff and the tenant of the apartment, and exercised a general supervision over this property, including keeping the property in repair. What he did with the rent does not appear. It does appear that what he did was with the acquiescence and consent of the owners.

From the evidence it is not clear whether Schrage took charge of the property as owner, as agent, or as administrator, under a mistaken belief as to his powers as such.

It does not appear that he ever did anything to this stairway or that anyone else did anything to it after the lease of the storeroom to Reiff. At the time of the lease to Reiff and by agreement between Reiff and Lingler, the former placed a substance variously described as linoleum, plywood, and masonite on the treads of the stairs and in consideration of this the rent was reduced for a few months. A loose piece of this substance was found on the afternoon shortly after this accident, on the tread near the defect, and its shape indicated that it had been broken from the point of the defect. It is in evidence that Reiff placed a sign with the word "Men" in the restaurant above the door leading to this stairway.

The rule for determining liability for injuries caused by defective premises is stated in 38 American Jurisprudence, 753, Section 94, in this language:

"A person who makes use of a dangerous place for

his own purposes may be held liable to respond in damages for an injury which results therefrom notwithstanding he cannot control the substance or thing which makes the place dangerous. However, the liability of an owner or occupant of real estate in reference to injuries caused by a dangerous or defective condition of the premises depends in general upon his having control of the property. In fact, such liability depends upon control, rather than ownership, of the premises. As a general rule, liability for injuries caused by dangerous instrumentalities terminates with a cessation of control thereover; and the liability of a landowner, likewise, is terminated ordinarily when he parts with possession of the premises in question."

And, at page 754, Section 95, it is said:

"The general rule is that one who assumes to be the owner of real property, and who, as such, assumes to control and manage it, cannot, by showing want of title in himself, escape liability for injuries resulting from its defective condition." See, also, *Gibson* v. *Johnson,* 69 Ohio App., 19, 42 N. E. (2d), 689.

As control of the premises is the test for determining the duty to keep in repair, it is evident that the duty to others is not limited to the owners of the legal title, although such ownership is sufficient to give them control and impose the duty. Any one who assumes control, no matter under what guise, assumes the duty. The fact that others are under a duty which they fail to perform is no defense to one who has assumed control and uses the dangerous premises thereby bringing others within the sphere of danger. Thus, it is said in 2 Restatement of Torts, 976, Section 360, that "if the lessee knows that the common approaches to his apartment or office have been made dangerous for use by the lessor's failure to perform his duty to maintain them in safe condition, the lessee may thereby be-

come subject to liability even to his gratuitous licensees if he fails to warn them of the danger involved in using the common approaches."

In 2 Restatement of Agency, 776, Section 354, the rule is stated thus:

"An agent who undertakes to act for the principal under such conditions that some action is necessary for the protection of the person of others or of their tangible things is subject to liability to such others for physical harm to them or to their things caused by his undertaking and subsequent negligent failure to act, if the need for action is so immediate or emergent that withdrawal from the undertaking is no longer possible without unreasonable risk to them, and the agent should so realize."

And at page 778, the application of the rule is illustrated, as follows, in comment c:

"The agent causes the damage by undertaking to afford protection and subsequently failing to give it. It is immaterial that he has not intended to give the protection or that he has done no acts in connection therewith. Thus, an agent who has undertaken to guard travelers on a main highway by placing lighted lanterns near obstructions in the road where the risk of collision is great, and where, if collision occurs, the harm likely to ensue is serious, is liable for a collision caused by his failure to do so, if he intended not to act or if he was careless in neglecting to place the lanterns, whether he placed some but not all or did not place any."

The relation of the legal title to liability for defective condition of premises is discussed, and the cases collected, in the annotation in 96 A. L. R., 1068. The array of cases there discloses the variety of circumstances under which liability has been imposed on defendants who were strangers to the title.

In view of the rule imposing liability, we do not

deem it necessary to consider at length whether the plaintiff intended to sue Schrage in a representative capacity or personally. There is no direct allegation that the action is against him in his representative capacity. The facts imposing personal liability are pleaded. Those facts would determine the nature of the liability and the judgment would be rendered accordingly. If necessary, the allegations of representative capacity would be disregarded as surplusage or as *descriptio personae*. *Heirs of Waldsmith* v. *Admrs. of Waldsmith,* 2 Ohio, 156; *Donohue* v. *Kendall,* 50 N. Y. Super. (18 Jones & Spencer), 386; and *Bannigan* v. *Woodbury,* 158 Mich., 206, 122 N. W., 531, 133 Am. St. Rep., 371.

We, therefore, hold that there is evidence tending to prove that each of the defendants bore such a relation to this common stairway as to impose a duty to exercise reasonable care to maintain it in a reasonably safe condition, and that there is evidence of a failure to perform that duty.

(2) The court delivered eight forms of verdicts to the jury. Seven of these were in favor of the plaintiff against George Schrage, administrator of the estate of David Lingler, deceased, one against all defendants, five against various combinations of defendants, and one in favor of all of the defendants. No other form in favor of a defendant or defendants was submitted.

After describing the various forms, the court instructed the jury as follows:

"Now immediately upon your retiring to the jury room, and before you commence your deliberations, you will select one of your number as foreman, and when three-fourths or nine of your number have agreed to one of the forms of verdict, those of you so agreeing, provided of course there are nine or more of your number, will sign the form of verdict agreed upon, and report in open court."

The jury used the form in favor of the plaintiff against George D. Schrage, administrator of the estate of David Lingler, deceased, inserted the figures $4000 in the blank space therein, and returned it, signed by all the jurors, to the court. What became of the other forms does not appear.

The plaintiff filed a motion for a new trial as to all defendants except Schrage, administrator, and also for judgment against them notwithstanding the verdict or absence of a verdict as to them.

George D. Schrage, administrator, filed a motion for a new trial and also for judgment notwithstanding the verdict against him.

The court sustained the motion of the plaintiff for judgment notwithstanding the verdict in favor of the defendants, other than George Schrage, and rendered judgment against all of the defendants. The court did not rule on the plaintiff's motion for a new trial as to all except Schrage. It overruled the motions of the defendants.

In support of his motion for judgment, each movant asserted that the action of the jury showed a finding in his favor. As the asserted inferences are antithetical, they cannot both be right. The question is whether either is.

A similar situation was presented in *Dow Drug Co.* v. *Nieman,* 57 Ohio App., 190, 13 N. E. (2d), 130. There were two defendants. Four forms of verdicts were furnished the jury and the court instructed the jury as to the circumstances under which each should be used. Only one form was furnished in favor of the defendants and that found in favor of both. As in this case, no form in favor of an individual defendant was furnished. The jury returned a verdict for the plaintiff against one defendant and made no express finding as to the other. We held that the jury's action must be regarded as a finding in favor of the defendant not

70

mentioned in the verdict. The subject is discussed fully in that case and we shall not repeat the citations here. We shall repeat only the quotation from *Durst* v. *Southern Ry. Co.*, 161 S. C., 498, 506, 508, 159 S. E., 844:

"We think the construction of a verdict should, and can, depend upon, not only the language used by the jury; but other things occurring in the trial may be, and should be properly regarded in determining what a jury intended to find. In a quite recent case, this court followed the latter suggested course. * * *

"Taking the language in which the verdict was couched in connection with the instructions as to the right of the jury to find against one or both of the defendants, and the instructions as to the forms of the verdict, it is our opinion that the verdict rendered in the first trial clearly indicated the intention of the jury to find against the railway company alone, and to acquit its codefendant, Williams, and to that extent we agree with the view of the appellants."

In 39 Ohio Jurisprudence, 1097, Section 369, it is said:

"However, a verdict against one of two defendants, with no mention of the other defendant, imports a finding in the latter's favor, especially where, with the approval of counsel for the various litigants, forms of verdicts were submitted to the jury, none of which made provision for a verdict against one defendant and in favor of the other, and one of the approved forms was used." See, also, *Wright* v. *Safeway Stores, Inc.*, 7 Wash. (2d), 341, 109 P. (2d), 542, 135 A. L. R., 1367; and *Louisville & N. Rd. Co.* v. *Maddox,* 236 Ala., 594, 183 So., 849, 118 A. L. R., 1318.

Our conclusion is that this appeal must be disposed of as though express formal verdicts had been returned in favor of all the defendants except George D. Schrage

against whom the verdict was returned in favor of the plaintiff.

(3) It is said that these findings are inconsistent and necessitate a new trial. Of course, if the verdicts are so inconsistent as to show misconduct or mistake of law on the part of the jury, that result would follow. Does that appear on this record?

It is undoubtedly true that negligence is the basis of the liability, and it is also true that there is no conflict in the evidence as to the negligent act—maintaining the stairway in an unsafe condition. But that unsafe condition can be attributed to the negligence of only those defendants whose duty it was to keep the stairway in a reasonably safe state of repair. It was necessary to bring each of the defendants into some relation to the possession of, or dominion over, this property in order to impose this duty. Except as to the coheirs there was no identity of relationship to the property. They had inherited the title from a common ancestor in October 1939. The accident which resulted in the death of plaintiff's intestate occurred on August 24, 1942. The evidence is very meager as to what action, if any, with reference to this property, was taken by any of the coheirs. They had title cast upon them by law, but whether they accepted it or any benefit from it, or exercised any dominion over it does not appear.

The evidence that imposed a duty upon Schrage was entirely different. He had no title and it was his active exercise of dominion that was relied on to impose a duty.

The evidence that carried the issue to the jury against Reiff was also distinct and different. He was the tenant and it was his use of this stairway and his invitation to his customers, knowing its condition, that was relied on to impose a duty.

It seems to us that the jury could very well have

concluded that the evidence failed to show a duty on the part of any of the defendants except Schrage, and if it did, then a verdict against him and in favor of the other defendants would be entirely consistent.

We can see no reason for giving greater effect to the express verdict in favor of the plaintiff against Schrage than to the affirmative finding in favor of the other defendants, which their omission from the verdict imports. The finding against Schrage is no basis for entering judgment against the others notwithstanding the finding in their favor.

(4) Counsel for defendants other than Reiff, requested two special charges before argument, both of which were refused. Whether the requested charges were in writing and were presented separately or as a series, does not appear. Nor does any exception appear to have been taken at the time of the refusal. Assuming, however, that the questions were properly presented, we are of the opinion that the charge or charges were properly refused. The first branch or charge is defective, in that it does not limit contributory negligence to such as directly contributed to the injury. The second branch or charge is defective in that it assumes to state the issues, but does not include the essential issues, and for that reason it would have been misleading.

We find no other error prejudicial to the appellants.

For these reasons, the judgment in favor of the plaintiff, against George D. Schrage, is affirmed and the judgment against the other defendants is reversed, and, as the court did not pass on the plaintiff's motion for a new trial as to them, the cause is remanded for action thereon and for further proceedings according to law.

*Judgment accordingly.*

Ross, P. J., and HILDEBRANT, J., concur.